UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREW ZAWILSKI, a/k/a Andrewzej
Zawilski, and MARIA ZAWILSKI,

      Plaintiffs,

                      CASE NO. 8:10-cv-1222-T-33AEP

v.

GOLDEN RULE INSURANCE COMPANY,

      Defendant.
_____/

**ORDER**

This matter is before the Court pursuant to Defendant
Golden Rule Insurance Company's Motion for Summary Judgment
filed on May 27, 2011. (Doc. # 21). On June 24, 2011,
Plaintiffs Andrew Zawilski and Maria Zalwilski filed a
Memorandum in Opposition to Defendant's Motion for Summary
Judgment. (Doc. # 32). As discussed below, the Court
denies the Motion for Summary Judgment because genuine
issues of material fact remain for resolution by a jury in
this insurance action.

## I. **Factual Background**

From April 2005, through July 2008, the Zawilskis
retained insurance coverage through Midwest Life Insurance
Company of Tennessee. (Doc. # 22 at 6, ¶ 4; 16, ¶ 4).
While the Zawilskis were still covered by Midwest Life, the

Zawilskis were targeted by an unsolicited telemarketer's call inquiring whether the Zawilskis were in the market for health insurance. (Rendon Dep. Doc. # 27 at 13-15; Mrs. Zawilski Dep. Doc. # 26 at 13). After speaking with the Zawilskis, the telemarketer passed the "lead" to Lois Rendon, an insurance salesperson. (Rendon Dep. Doc. # 27 at 15). Mr. Rendon called the Zawilskis and ultimately set up an appointment for July 26, 2008. On that date, Mr. Rendon came to the Zawilskis' home to discuss Golden Rule insurance. (Mr. Zawilski Dep. Doc. # 25 at 23, 25; Mrs. Zawilski Dep. Doc. # 26 at 14, 17; Rendon Dep. Doc. # 27 at 39).

During the July 26, 2008, meeting, Mr. Rendon supplied a Golden Rule brochure to the Zawilskis. (Mrs. Zawilski Dep. Doc. # 26 at 14). After he explained the insurance coverage, Mr. Rendon began filling out the application he provided for the Zawilskis. (Mrs. Zawilski Dep. Doc. # 26 at 18). Mr. Rendon alleges that to fill out the application he 1) used his laptop computer to access the online Golden Rule Network; 2) asked the Zawilskis each application question; and 3) then entered the relevant information into the Network. (Rendon Dep. Doc. # 27 at 39-43). Unlike Mr. Rendon, the Zawilskis allege that

although he did have a laptop computer, Mr. Rendon filled out a paper application. (Mr. Zawilski Dep. Doc. # 25 at 30; Mrs. Zawilski Dep. Doc. # 26 at 19). Also, the Zawilskis both testified that instead of asking one application question at a time, Mr. Rendon asked only some general questions. (Mr. Zawilski Dep. Doc. # 25 at 34–35; Mrs. Zawilski Dep. Doc. # 26 at 20).

The Zawilskis' and Mr. Rendon's testimony differs significantly as to the information regarding Mr. Zawilski's health, which the Zawilskis provided for the Golden Rule Application. The Zawilskis allege that when Mr. Rendon asked about certain health issues, they truthfully answered the questions, responding to Mr. Rendon that Mr. Zawilski had problems with his heart. (Mr. Zawilski Dep. Doc. # 25 at 34; Mrs. Zawilski Dep. Doc. # 26 at 20). The Zawilskis further allege that when they told Mr. Rendon about Mr. Zawilski's heart problems, Mr. Rendon did not want to hear that information (Mr. Zawilski Dep. Doc. # 25 at 34; Mrs. Zawilski Dep. Doc. # 26 at 20), and he put his fingers over his ears to emphasize he did not want to hear any negative medical information. (Doc. # 22 at 9, ¶ 9; 19, ¶ 9). It is Mr. Rendon's testimony that neither Mr. Zawilski nor Mrs. Zawilski told him about Mr.

Zawilski's heart problems. (Rendon Dep. Doc. # 27 at 45–46).

The application included a "Statement of Understanding," which provided in pertinent part: "The broker may only submit the application and initial payment, and may not promise me coverage, modify Golden Rule's underwriting policy or terms of coverage, or change or waive any right or requirement." (Tolliver Aff. Doc. # 24 at 3–4, ¶ 7). This "Statement of Understanding" is located immediately above a required "e-signature" on the Golden Rule application. Id. Mr. Rendon alleges that he went through every part of the Statement of Understanding with the Zawilskis. (Rendon Dep. Doc. # 27 at 56). On the other hand, the Zawilskis testified that Mr. Rendon did not explain to them or review with them the Statement of Understanding. (Mr. Zawilski Dep. Doc. # 25 at 39; Mrs. Zawilski Dep. Doc. # 26 at 22).

The Zawilskis testified that after the completion of the application, Mr. Rendon asked them to manually sign the application. (Mr. Zawilski Dep. Doc. # 25 at 32; Mrs. Zawilski Dep. Doc. # 26 at 22). Additionally, the Zawilskis allege that Mr. Rendon gave them no time to review what they were signing because Mr. Rendon was in a

—4—

hurry to get to another appointment. (Mr. Zawilski Dep. Doc. # 25 at 39, 41). Mrs. Zawilski indicated: "We don't have time. He was, oh, oh, oh he like he's hurry." (Mrs. Zawilski Dep. Doc. # 26 at 22).[1] Mr. Rendon, on the other hand, testified that he turned the computer around and allowed the Zawilskis to personally enter the e-signatures. (Rendon Dep. Doc. # 27 at 57–58).

Thereafter, Golden Rule issued a Certificate of Insurance to the Zawilskis, effective August 1, 2008, and they received insurance coverage from Golden Rule. (Mr. Zawilski Dep. Doc. # 25 at 46).

The Zawilskis allege that, effective March 29, 2009, they cancelled their Golden Rule policy due to loss of employment and income. (Doc. # 22, at 8, ¶ 8; 18, ¶ 8). On or about April 23, 2009—about twenty-five days later—Mr. Zawilski had an appointment with his physician, Robert Dean, M.D. (Dean Dep. Doc. # 28 at 27–28). In 2005, Dr. Dean had diagnosed Mr. Zawilski with aortic stenosis. Id. At the April 23, 2009, appointment, Dr. Dean referred Mr. Zawilski to Paul Kudelko, D.O., a cardiologist. Id. Dr. Kudelko was to confirm the status of Mr. Zawilski's aortic

---

[1] The Zawilskis, both Polish immigrants, delivered their testimony in English, but with some difficulty.

stenosis and to discover whether his ventricular function for the stenosis progressed from moderate to severe. Id. at 28.

Shortly thereafter, Mr. Zawilski contacted Mr. Rendon to submit an application for reinstatement of the Golden Rule insurance policy. (Mr. Zawilski Dep. Doc. # 25 at 59). The Zawilskis allege that Mr. Rendon came to their home and, without inquiring about their injuries or illnesses in the previous year, Mr. Rendon again filled out their application. (Mr. Zawilski Dep. Doc. # 25 at 60; Mrs. Zawilski Dep. Doc. # 26 at 29). Mr. Rendon alleges that it had been more than ninety days since the Zawilskis had cancelled their Golden Rule insurance, which is why he filled out a new application. (Rendon Dep. Doc. # 27 at 54). Further, Mr. Rendon stated that he filled out and submitted the second application in the exact same manner that he filled out and submitted the first application. (Rendon Dep. Doc. # 27 at 54).

Golden Rule alleges that after Mr. Rendon submitted the second application, a Golden Rule representative contacted Mrs. Zawilski and requested more medical history information. (Tolliver Aff. Doc. 24 at 10–11, ¶ 14). Mrs. Zawilski allegedly confirmed that neither she nor her

husband had seen a doctor within the past two years.  Id.
Golden Rule then reinstated the Certificate of Insurance,
effective May 15, 2009.  (Tolliver Aff. Doc. # 24 at 11, ¶
15).  Mrs. Zawilski, however, testified that she does not
recall receiving a call from a Golden Rule representative
requesting health insurance information.  (Mr. Zawilski
Dep. Doc. # 25 at 66; Mrs. Zawilski Dep. Doc. # 26 at 31–
33).

In June of 2009, Golden Rule received claims for Mr.
Zawilski's medical care, including claims for evaluations,
examinations, consultations, treatments, and heart valve
replacement surgery.  (Gaskey Aff. Doc. # 23 at 4, ¶ 4).
After Golden Rule conducted a routine investigation,
involving a review of Mr. Zawilski's medical records,
Golden Rule discovered that Mr. Zawilski's insurance
application was inaccurate.  (Gaskey Aff. Doc. # 23 at 6, ¶
7).  Upon learning this information, Golden Rule rescinded
the Zawilskis' coverage.  (Gaskey Aff. Doc. # 23 at 7, ¶
9).

## II. **Procedural History**

The Zawilskis initiated this action in State court on
April 9, 2010, and Golden Rule removed it to this Court.
(Doc. ## 1, 2).  On May 28, 2010, the Zawilskis filed an

amended complaint against Golden Rule containing two counts: (1) declaratory relief and (2) breach of contract. (Doc. # 2). On June 2, 2010, Golden Rule filed its answer, affirmative defenses and counterclaim for declaratory relief. (Doc. # 4). Golden Rule asserts as affirmative defenses: 1) rescission due to intentional or material misrepresentation; and 2) denial as pre-existing condition. (Doc. # 4). The Zawilskis responded to Golden Rule's affirmative defenses and counterclaim on June 23, 2010. (Doc. # 6). Golden Rule now seeks summary judgment as to all claims asserted.

### III. <u>Legal Standard</u>

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the

governing law.  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Id.  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  Id.

## IV. **Analysis**

In this diversity case, the Court applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result. Tech. Coating Apps., Inc. v. United States Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998).  Furthermore, this Court must apply Florida law in the same manner that the Florida Supreme Court would apply it.  Brown v. Nichols, 8 F.3d 770, 773 (11th Cir. 1993).

In the instant case, the Zawilskis argue that summary judgment is inappropriate because a genuine issue of material fact exists as to whether Mr. Rendon served as Golden Rule's agent.  (Doc. # 32).  The Zawilskis allege that Mr. Rendon acted as an agent of Golden Rule, and thus, Mr. Rendon's actions (including learning of Mr. Zawilski's heart condition and not including it on the insurance application) should be attributable to Golden Rule.  Id.

Golden Rule, on the other hand, contends that the difference between a broker and an agent is clear, and Mr. Rendon, as a broker, was an agent for the Zawilskis and not an agent for Golden Rule.  (Doc. # 21).  Thus, Golden Rule argues that Mr. Rendon's actions should be attributable to the Zawilskis.  Id.

In addressing the merits of the Motion for Summary Judgment, the Court will first address the difference between a broker and an agent.  Then, the Court will discuss the Almerico decision (including its interpretation of Florida Statute Section 626.342) and other governing law to reach its decision that summary judgment is not appropriate in this case because a genuine issue of material fact exists.

A. **The Difference Between a Broker and an Agent**

In _Almerico v. RLI Ins. Co._, 716 So. 2d 774, 776-77 (Fla. 1998), the Florida Supreme Court explained the difference between an insurance broker and an insurance agent. An insurance broker is a middleman between the insured and the insurer, "soliciting insurance from the public under no employment from any special company, and, upon securing an order, placing it with a company selected by the insured or with a company selected by himself or herself." _Id._ at 776. An insurance broker is not exclusively employed by any specific company. _Id._ Generally, an insurance broker is an agent of the insured. _Id._ In some instances, a broker may serve in a dual capacity and act as an agent for the insurer. _Id._ at 776-77.

On the other hand, an insurance agent is exclusively employed by, and has a continuous relationship with, a specific insurer. _Almerico_, 716 So. 2d at 776. An insurance agent is an agent of the insurer and not of the insured. _Id._

In _Essex Ins. Co. v. Zota_, the Florida Supreme Court noted that the "'distinction between an agent and a broker is important because acts of an agent are imputable to the

insurer, and acts of a broker are imputable to the insured.'" 985 So. 2d 1036, 1046 (Fla. 2008)(quoting 3 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 45:1 (3d ed. 2007)).

## B. **Statutory Agency**

Florida Statutes Chapter 626, regulates the appointment of insurance agents by insurance companies. Almerico, 716 So. 2d at 778. Florida Statute section 626.342, titled "Furnishing supplies to unlicensed life, health, or general lines agent prohibited; civil liability," provides in part:

> (1) An insurer, a managing general agent, an insurance agency, or an agent, directly or through any representative, may not furnish to any agent any blank forms, applications, stationery, or other supplies to be used in soliciting, negotiating, or effecting contracts of insurance on its behalf unless such blank forms, applications, stationery, or other supplies relate to a class of business with respect to which the agent is licensed and appointed, whether for that insurer or another insurer.
>
> (2) Any insurer, general agent, insurance agency, or agent who furnishes any of the supplies specified in subsection (1) to any agent or prospective agent not appointed to represent the insurer and who accepts from or writes any insurance business for such agent or agency is subject to civil liability to any insured of such insurer to the same extent and in the same manner as if such agent or prospective agent had been appointed or authorized by the insurer or such

> agent to act in its or his or her behalf. The
> provisions of this subsection do not apply to
> insurance risk apportionment plans under §
> 627.351.

Fla. Stat. § 626.342.   In Almerico, the Court interpreted

Section 626.342 and held that "under the provisions of

section 626.342(2) . . . as well as Florida's common law,

civil liability may be imposed upon insurers who cloak

unaffiliated insurance agents with sufficient indicia of

agency to induce a reasonable person to conclude that there

is an actual agency relationship." Almerico, 716 So. 2d at

783.

The Almerico Court interpreted section 626.342 to mean

that an insurance broker may become the statutory agent of

the insurer if evidence of indicia of agency exists, and

the insurer subsequently accepts business from that broker.

Almerico, 716 So. 2d at 781; Amstar Ins. Co. v. Cadet, 862

So. 2d 736 (Fla. 5th DCA 2003).   Evidence of indicia of

agency may be found where an insurer "furnishes an

insurance agent or agency with 'any blank forms,

applications, stationery, or other supplies to be used in

soliciting, negotiating, or effecting contracts of

insurance.'" Almerico, 716 So. 2d at 777 (quoting Fla.

Stat. § 626.342(1)).

However, even if evidence of indicia of agency exists, and the insurer subsequently accepts business from the broker, liability will not attach to the insurer if the "insured knew or was put on notice of inquiry as to limitations on the agent's actual authority." Almerico, 716 So. 2d at 781.

In Joseph v. Zurich Life Ins. Co. of Am., 159 Fed. App'x 114 (11th Cir. 2005), the Eleventh Circuit discussed when statements to an insurance agent do not bind the insurer. Golden Rule asserts that Joseph mandates the entry of summary judgment in this case. In Joseph, the court affirmed summary judgment in favor of defendant, an insurance company. Id. at 114. The plaintiff, admittedly, did not disclose material medical information (a debilitating stroke) in his life insurance application. Id. at 115. However, the plaintiff argued that because he later provided the material medical information to Zurich's nurse, and the nurse was Zurich's "agent," then Zurich should have considered the information "disclosed." Id. at 117. However, in that case, the insurance application precluded anyone from accepting information not already in the application. Id. at 116.

The Eleventh Circuit reasoned that since the insurance application prohibited anyone from changing the application, the plaintiff was on notice that his statements to the nurse would be insufficient to notify the insurance company of his relevant medical information. Joseph, 159 Fed. App'x at 117–18.  The facts of the opinion do not address whether the plaintiff actually read the application before signing it or whether the insurance broker prevented the plaintiff from reading the application.

Golden Rule also points to the Amstar decision in support of its argument that Mr. Rendon was an insurance broker, rather than an insurance agent.  In Amstar, Florida's Fifth District Court of Appeal reversed summary judgment for the plaintiff and remanded the case to the trial court to enter summary judgment in favor of the defendant insurance company.  Amstar, 862 So. 2d at 742. The court explained that summary judgment for the plaintiff was inappropriate because, although the defendant furnished company materials to the broker and accepted business from the broker, the insurance application informed the plaintiff of the limitations on the broker's authority. Id. at 741.  The facts of the opinion do not discuss

whether the plaintiff read the application or whether the broker prevented plaintiff from reading the application.

## C. **Mr. Rendon's Agency Status**

The Zawilskis presented evidence that Golden Rule may have "cloaked" Mr. Rendon with sufficient indicia of agency to lead the Zawilskis to believe that Mr. Rendon was Golden Rule's agent. The Zawilskis received a brochure (materials) from Mr. Rendon, (Mrs. Zawilski Dep. Doc. # 26 at 13); Mr. Rendon spoke to them about Golden Rule and did not discuss any other insurance company (Mr. Zawilski Dep. Doc. # 25 at 23, 25; Mrs. Zawilski Dep. Doc. # 26 at 14, 17); Mr. Rendon supplied the Zawilskis with the first Golden Rule application (Mrs. Zawilski Dep., 18); Mr. Zawilski contacted Mr. Rendon to renew their insurance policy (Mr. Zawilski Dep. Doc. # 25 at 59); and Mr. Rendon supplied the Zawilskis with a second application. Id. Further, Golden Rule did accept business from Mr. Rendon, as evidenced by Golden Rule's issuance of the Certificate of Insurance to the Zawilskis. Id. at 46.

Golden Rule argues that even if sufficient evidence exists to find indicia of agency, and Golden Rule accepted business from Mr. Rendon, liability should not attach to Golden Rule. Relying on Joseph and Amstar, Golden Rule

argues that it cannot be held accountable for Mr. Rendon's actions because Golden Rule's insurance applications put the Zawilskis on notice of the limitations on Mr. Rendon's authority, through the Statement of Understanding. (Tolliver Aff., ¶ 7).

The facts presented in this case; however, are materially different from the facts presented in Joseph and Amstar. Specifically, in Joseph, the plaintiff admitted that he did not offer all the material medical information when filling out the insurance application—he omitted information about his stroke. In this case, both Mr. and Mrs. Zawilski testified that when Mr. Rendon inquired about their medical history, they were completely honest. They testified that they told Mr. Rendon about Mr. Zawilski's heart condition.

In Joseph and Amstar, the plaintiffs did not claim that 1) the agent refused to hear negative medical information; 2) the agent prevented the insured from reading the application; or 3) the insured never read the application before signing it. In this case, the Zawilskis offered testimony that Rendon covered his ears when the Zawilskis offered relevant medical history signaling to the Zawilskis that they should not disclose such information.

The Zawilskis also testified that, due to Rendon's hurried state, they were unable to read the application before signing it.

The Court agrees with the Zawilskis that a genuine issue of material fact exists as to whether Mr. Rendon acted in a dual capacity as a Broker for the Zawilskis and an agent for Golden Rule.  There is also a significant difference in the testimony regarding whether the Zawilskis disclosed relevant medical testimony to Mr. Rendon in the first place, and if Mr. Rendon disregarded that information in conjunction with filling out the Zawilskis' insurance applications.  There record is replete with conflicting testimony regarding material issues of fact.  This Court cannot make a credibility determination between the opposite testimony offered by the Zawilskis and Mr. Rendon. That determination must be made by a jury after hearing the relevant testimony.

At this stage of the proceedings, the Court draws all reasonable inferences from the evidence in the Zawilskis' favor, as the non-movants in this case.  After reviewing all the evidence presented, the Court denies the Motion for Summary Judgment.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Golden Rule's Motion for Summary Judgment (Doc. # 21) is **DENIED.**

**Done** and **Ordered** in Chambers, in Tampa, Florida, this <u>4th</u> day of August, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record